### FIRST NATIONAL BANK OF SEMINOLE, Texas, Petitioner,

v.

### Sam P. HOOPER, Mary Beth Hooper, and Hooper and Sons Investment Company, Inc., Respondents.

No. 01–0688.

Supreme Court of Texas.

Argued Oct. 23, 2002.

Decided Feb. 13, 2003.

Rehearing Denied June 5, 2003.

Ken Slavin, Kemp Smith, P.C., El Paso, Lonald Charles Hobbs, Odessa, for petitioner.

Quinn Clinton Chandler, Frank D. Chandler, Chandler & Chandler, P.C., Dallas, for respondents.

Justice O'NEILL delivered the opinion of the Court.

In this fraudulent transfer case, an insolvent debtor conveyed a deed of trust lien to First National Bank of Seminole to further secure a valid antecedent debt. When the transfer occurred, the underlying property's value far exceeded the debt secured. We must decide whether such a transfer can support a claim for constructive fraud under the Texas Uniform Fraudulent Transfer Act absent evidence that the transferee intended to assist the debtor in evading his creditors. We hold that it cannot because, as a matter of law, the value of the interest in an asset transferred for security is reasonably equivalent to the amount of the debt that it secures. Accordingly, we reverse the court of appeals' judgment and render judgment for the Bank.

I

On January 4, 1990, First National Bank of Seminole loaned Ernest Thornton $300,000 to consolidate his debt in connection with the purchase and operation of the Owego Gathering System, a twenty-eight-mile gas pipeline system that runs through several Texas counties. To secure the loan, Thornton pledged security interests in Owego's accounts, gas contracts, chattel paper, general intangibles, equipment, and booster stations. But whether by design or mere oversight, the security interests conveyed to the Bank did not cover the pipeline easements or rights-of-way contracts. Over the next two years, the Bank loaned Thornton an additional $100,000 in connection with Owego.

On March 30, 1993, Sam P. Hooper, Mary Beth Hooper, and Hooper & Sons Investment Company obtained a fraud judgment against Thornton for approximately $950,000. Some two weeks later, the Bank had Thornton sign a deed of trust, dated January 4, 1990, the original loan date, covering the pipeline easements and rights-of-way so that the entire system now secured Thornton's debt.[1] The Bank filed the deed of trust in the county records the next day. Shortly thereafter, the Hoopers abstracted their judgment against Thornton. A few weeks later, the Bank began foreclosure proceedings, and purchased the part of the system that the deed of trust secured for $247,900. The Bank later bought the contract rights and equipment listed in the security agreement for an additional $20,000, leaving an approximate $80,000 deficiency on Thornton's loan.

The Hoopers sued the Bank, alleging that Thornton's conveyance of the deed of trust lien to the Bank was a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (TUFTA), TEX. BUS. & COM.CODE §§ 24.001–24.012. The Hoopers sought damages and a judgment setting aside the Bank's purchase. The jury found that Thornton, but not the Bank, intended to hinder, delay, or defraud the Hoopers when he transferred the deed of

---

1. The acknowledgment accompanying the deed was dated April 15, 1993, the date it was actually signed.

trust lien to the Bank, and that Thornton was insolvent when the transfer occurred. The jury also found that the deed of trust lien was not exchanged for reasonably equivalent value. The jury valued the system at the time of the transfer at $700,000, and the trial court rendered judgment in the Hoopers' favor for that amount.

The court of appeals affirmed the trial court's judgment, holding that there was a variance between the value of the deed of trust and the value of the Owego system at the time the lien was created, and therefore the Bank had failed to establish as a matter of law that it gave reasonably equivalent value for the deed of trust lien. 48 S.W.3d 802, 808. We granted the Bank's petition for review to consider whether the Hoopers' judgment is sustainable under TUFTA.

## II

■ The Hoopers rely on sections 24.005 and 24.006 of TUFTA to support their judgment.[2] Under section 24.005(a), a transfer is fraudulent if the debtor makes it intending to defraud a creditor, or, irrespective of the debtor's intent, the debtor receives less than the asset's reasonably equivalent value in return:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation. . . .

TEX. BUS. & COMM.CODE § 24.005(a). If the evidence shows that the debtor transferred the asset with fraudulent intent under subsection (a)(1), the transfer is nevertheless not voidable against a person who received the transfer in good faith and for "a reasonably equivalent value." *Id.* § 24.009(a).

The Hoopers also rely on section 24.006, which provides that a transfer is fraudulent if the debtor is insolvent when the transfer is made and does not receive reasonably equivalent value for the transfer:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 24.009(a).

Here, the Bank does not challenge the jury's findings that Thornton was insolvent and intended to defraud the Hoopers when he transferred the deed of trust lien. Rather, the Bank claims that, because the transfer was made to secure a valid antecedent debt, reasonably equivalent value was given as a matter of law. The Hoopers, on the other hand, contend that the jury was within its discretion to conclude that reasonably equivalent value was not given for the transfer because the value of

---

2. TUFTA became effective September 1, 1987. Act of June 19, 1987, 70th Leg., R.S., ch. 1004, 1987 Tex. Gen. Laws 3388, 3394. The Act was amended effective September 1, 1993, but no changes relevant to this appeal were made. *See* Act of June 11, 1993, 73d Leg., R.S., ch. 570, 1993 Tex. Gen. Laws 2098. Because the deed of trust lien that Thornton conveyed was executed before the 1993 amendments became effective, we apply the 1987 version of TUFTA.

the property that secured the deed of trust lien far exceeded the amount of Thornton's debt to the Bank. Before considering the parties' contentions regarding reasonably equivalent value, however, we must first determine exactly what Thornton transferred.

■ TUFTA specifically allows transfers to secure pre-existing debt as long as reasonably equivalent value is given for the asset that is transferred. *Id.* § 24.004(a) (providing that "value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or *an antecedent debt is secured* or satisfied....") (emphasis added). Section 24.004(d) of TUFTA defines "reasonably equivalent value" as "includ[ing] without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." *Id.* § 24.004(d). In this case, both the trial court and the court of appeals considered the asset transferred to be the entire pipeline system, which the jury valued at $700,000. We agree that if the system itself was the subject of the conveyance, the asset's disputed value at the time of transfer would have been within the jury's province to decide. What was transferred here, though, was not an asset or service whose value was subject to dispute, but a lien that had a defined value when it was created. That is, the deed of trust did not convey the pipeline to the Bank but merely perfected a security interest in the pipeline up to the amount of Thornton's debt. Accordingly, the value of the asset transferred was no more than Thornton's pre-existing debt that it secured.

Our interpretation of the asset to be valued in this context comports with the Uniform Fraudulent Transfer Act, upon which TUFTA was modeled. A comment to section 3 of the uniform act, which is analogous to section 24 of TUFTA, states:

> [A] transfer for security is ordinarily for a reasonably equivalent value notwithstanding a discrepancy between the value of the asset transferred and the debt secured, since the amount of the debt is the measure of the value of the interest in the asset that is transferred.

UNIF. FRAUDULENT TRANSFER ACT § 3, cmt. 3, 7A U.L.A. 296 (1999). Were this not the law, creditors would be reluctant to negotiate loan work-outs with financially troubled debtors because taking collateral in excess of their loan would expose them to substantial risk over and above the amount of the debt. As one federal bankruptcy court explained:

> [a] secured creditor does not own the collateral securing a debt; the creditor has no rights in the collateral except as necessary to protect the claim. The debtor continues to own the property; the secured creditor has only the right to force its liquidation for the sole purpose of paying the secured debt. A secured creditor is not entitled to collect more than the amount of the debt from such a liquidation of the collateral. Any collateral value in excess of the debt is available to satisfy other creditors.

*Anand v. Nat'l Republic Bank,* 210 B.R. 456, 459 (Bankr.N.D.Ill.1997) (citing *Unisys Fin. Corp. v. Resolution Trust Corp.,* 979 F.2d 609, 611 (7th Cir.1992)).

We agree that, from the debtor's perspective, "the value of the interest in the collateral transferred to the creditor can never be more than the amount of the debt. The value of the collateral is therefore irrelevant to the ultimate question because the excess over the debt is not lost to the debtor or other creditors." *Anand,* 210 B.R. at 459. Here, the value of the deed of trust lien that Thornton conveyed could not have been more than the amount

of Thornton's debt to the Bank. Therefore, the Bank gave reasonably equivalent value for the deed of trust lien as a matter of law, and the Hoopers' judgment cannot be sustained under sections 24.005 or 24.006 of TUFTA.

## III

Because First National Bank of Seminole acquired the deed of trust lien from Ernest Thornton for reasonably equivalent value as a matter of law, we reverse the court of appeals' judgment and render judgment in favor of the Bank.