YOKOGAWA CORPORATION
OF AMERICA, Appellant,

v.

SKYE INTERNATIONAL HOLDINGS,
INC., Alan Moore d/b/a Red Oak Capital, Alan Moore, Individually, and Jerry Trojan, Appellees.

No. 05–04–00134–CV.

Court of Appeals of Texas,
Dallas.

March 10, 2005.

P. Michael Jung, James K. Peden, III, Strasburger & Price, L.L.P., James H. Moody, III, Quilling, Selander, Cummiskey & Lownds, P.C., Dallas, for appellant.

Thomas M. Melsheimer, Fish & Richardson, L.L.P., Steven H. Stodghill, Lynn, Stodghill, Melsheimer & Tillotson, Geoffrey S. Harper, Kelly Dean Hine, Fish & Richardson, P.C., Dallas, for appellees.

Before Justices WRIGHT, MARTIN RICHTER, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

Yokogawa Corporation of America appeals a summary judgment rendered in favor of Skye International Holdings, Inc., Alan Moore, individually and d/b/a Red Oak Capital, and Jerry Trojan. In two points of error, Yokogawa contends the trial court erred in granting appellees' traditional and no-evidence motion for summary judgment. We affirm.

### Background

Yokogawa manufactured a private label version of one of its products for Environmental Products Amalgamated Pty. Ltd. d/b/a Skye USA. When Skye USA failed to pay the invoices for the products, Yokogawa filed a demand for arbitration in March of 1999.

In the spring of 1999, a broker contacted Moore and Trojan about the possibility of providing financing for Skye International.

Prior to this point, Moore and Trojan had no involvement with Skye International or any of its owners, officers, or directors. Moore and Trojan learned that Skye International had financial difficulties. Graeme McDougall, Sky International's owner, presented Moore and Trojan with a plan to raise up to four million dollars in working capital. McDougall also presented them with a large backorder log for its machines. With a bridge loan from Moore and Trojan, McDougall said that it could purchase the materials necessary to increase its production and fill the backlog orders.

On May 17, 1999, Moore and Trojan signed a security purchase agreement with Skye International. Pursuant to that agreement, Moore loaned $590,000 and Trojan loaned $10,000 to Skye International. As security for the loan, Moore and Trojan received a first lien security interest in Skye International's personal and real property.

In August of 1999, Yokogawa, Skye USA, and Skye International entered into a settlement agreement. Pursuant to this agreement, Skye International guaranteed payment of the money Skye USA owed to Yokogawa. As a result of the settlement agreement, Yokogawa dismissed the arbitration. Skye USA and Skye International failed to make the scheduled payments under the settlement agreement. After several assurances from Skye International that it would soon be able to make the payments fell through, Yokogawa filed suit against Skye USA and Skye International to enforce the settlement agreement on March 9, 2000.

Skye International defaulted on its notes to Moore and Trojan. At a public sale on July 10, 2000, Moore and Trojan foreclosed on the collateral pursuant to its security interest. They purchased the assets of Skye International for approximately $400,000. They then transferred those assets to a newly formed corporation called Skye Delaware.

## Standard of Review

The standard of review in summary judgment is well-established. Tex.R. Civ. P. 166(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833.

### Fraudulent Transfer

■ The purpose of the Uniform Fraudulent Transfer Act is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach. *Telephone Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

Yokogawa alleged in its lawsuit that creation of the first lien security interest, the foreclosure on that lien, and the subsequent transfer of assets to Skye Delaware constituted fraudulent transfers. *See* TEX. BUS. & COM.CODE § 24.005(a) (Vernon 2002). Section 24.005 provides, in pertinent part, as follows:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim rose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

A transfer is not voidable under section 24.005(a)(1) against a person who took in good faith and for reasonably equivalent value. TEX. BUS. & COM.CODE ANN.

§ 24.009(a) (Vernon 2002). Pursuant to section 24.005(a)(2), a transfer is not fraudulent if it was made for reasonably equivalent value.

Appellees moved for summary judgment on the grounds that: (1) creation of the security interest was not fraudulent because they took in good faith and for reasonably equivalent value; and (2) the foreclosure and subsequent transfer of assets to Skye Delaware is not a transfer within the meaning of TUFTA.

■ We agree that the foreclosure and subsequent transfer of assets to Skye Delaware are not covered by TUFTA. A secured party is entitled to foreclose on its security interest in the event of default. TEX. BUS. & COM.CODE ANN. § 9.601(a)(1) (Vernon 2002). Moore and Trojan's enforcement of its security interest upon Skye International's default does not constitute a voidable transfer. Nor is the subsequent transfer of the assets from the foreclosure sale actionable under TUFTA. Under TUFTA, "transfer" means disposing of or parting with an asset. TEX. BUS. & COM.CODE ANN. § 24.002(12) (Vernon 2002). Property encumbered by a valid lean is not an asset under TUFTA. TEX. BUS. & COM. CODE ANN. § 24.002(2)(A) (Vernon 2002). Because the property Moore and Trojan purchased at the foreclosure sale was encumbered by a valid lien, TUFTA is inapplicable.

### 1. Good Faith

■ We must determine whether Moore and Trojan took their security interest in good faith and for reasonably equivalent value. The business and commerce code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." In the context of fraudulent conveyances, "good faith" means that a transaction was made without a secret agreement. *Hawes*

*v. Central Tex. Prod. Credit Ass'n,* 503 S.W.2d 234, 236 (Tex.1973); *Tigrett v. Pointer,* 580 S.W.2d 375, 396 (Tex.Civ. App.-Dallas 1978, writ ref'd n.r.e.).

Appellees presented summary judgment evidence establishing that Skye International's assets were already encumbered by a lien in favor of another creditor, Transcon Capital. The summary judgment evidence included Skye International's balance sheet dated March 31, 1999. The following is noted on the balance sheet:

> Skye is currently insolvent. Skye is unable to pay it's [sic] bills and debts as they become due. Skye is on C.O.D. terms with almost all of its suppliers. Skye is currently unable to fulfill orders for products because of Skye's insolvent condition. Sencon Pty. Ltd has sued for non-payment of goods. Yokogawa Corporation is threatening to sue for non-payment of goods. Skye is currently not a going concern company. Skye is only able to produce a limited amount of product because of Skye's financial state of affairs. Skye/EPA has engaged an accounts payable workout company to deal with past due vendors. Transcon Capital has given notice of foreclose [sic] unless an immediate loan or injection of capital is obtained by Skye. Skye has engaged a broker dealer network to solicit a private placement with the goal of raising four million dollars.

Moreover, McDougall notified Yokogawa by letter both of Transcon's security interest and of the likelihood that Transcon would enforce its security interest if it did not obtain a bridge loan. Skye International approached appellees about a bridge loan. Appellees had no prior relationship with Skye International or its officers and directors. Appellees loaned $600,000 to Skye International. In return, appellees received a first lien and Transcon's lien was subordinated with Transcon's consent. This loan allowed the company to attempt a private placement offering, that, if successful, would have enabled Skye International to pay its debt to Yokogawa.

Yokogawa countered with summary judgment evidence asserting it raised a fact issue on the good faith affirmative defense. Specifically, Yokogawa cites six facts that it claims create a fact question on the issue of good faith. (1) Moore and Trojan's lien was for all of Skye International's property. Moore and Trojan's first lien was senior to all other security interests in Skye International, except that Transcon retained a first lien on accounts receivable prior to May 17, 1999.(2) Following the foreclosure of its security interest, Moore and Trojan formed a new entity and transferred the assets to that entity. We fail to see how foreclosing on its security interest after the debt became due reflects a lack of good faith in providing the bridge loan. (3) Prior to entering into the securities purchase agreement, Moore and Trojan were aware of Skye International's financial difficulties. The purpose of Moore and Trojan's loan was to help Skye International recover from its financial problems. Yokogawa was likewise aware of the problems and was aware that previous secured creditor, Transcon, was threatening to foreclose its lien if Skye International failed to obtain a bridge loan. (4) and (5) In March 2000, Moore knew that Yokogawa had threatened suit and began negotiating with Yokogawa "on behalf of Skye International." The letters Moore sent to Yokogawa were on Red Oak Capital letterhead. Moore stated that he did not represent Skye International. It was basically a letter from one unpaid creditor to another. Moore had not received a single payment on the loan it had made to Skye International more than ten months earlier. When these letters were written, Skye International was in default

under the securities purchase agreement. Moore and Trojan could have chosen to foreclose on their lien at that time. (6) Finally, Yokogawa relies on the fact that Moore and Trojan, after the foreclosure, have essentially continued Skye International's business. Again, we fail to see how this bears upon their good faith in entering into the securities purchase agreement. They provided bridge financing to a company struggling financially, and that loan was secured with a valid first lien.

We conclude appellees established that they entered into the securities purchase agreement in good faith and that Yokogawa failed to raise a fact question on the issue of good faith.

## 2. Reasonably Equivalent Value

■ Having determined that Moore and Trojan entered the transaction in good faith, we must now address whether they took the security interest for reasonably equivalent value. The supreme court has held that, as a matter of law, the value of the interest in an asset transferred for security is reasonably equivalent to the amount of the debt that it secures. *First Nat'l Bank of Seminole v. Hooper*, 104 S.W.3d 83, 84 (Tex.2003). In *Hooper*, the bank loaned money to the debtor for the purchase and operation of a pipeline system. To secure the loan, the bank received a security interest in certain collateral. The security interest, however, did not include the pipeline easements. Two weeks after a creditor obtained a $950,000 judgment against the debtor, the bank had the debtor sign a deed of trust covering the pipeline easements so that the entire pipeline system now secured the debt. The bank subsequently foreclosed on the collateral. *Id.* at 84. The creditor sued the bank claiming the additional security pledged after the creditor obtained its judgment against the debtor constituted a fraudulent transfer. *Id.* The jury found that the bank did not provide reasonably equivalent value for the deed of trust because the value of the pipeline system far exceeded the amount of the debt. The trial court rendered judgment in Hooper's favor and the court of appeals affirmed. *Id.* at 86. The supreme court reversed. It held the value of the collateral transferred can never be more than the amount of the debt. *Hooper*, 104 S.W.3d at 86. The value of the collateral is irrelevant because the excess over the debt is not lost to the debtor or other creditors. *Id.* (citing *Anand v. Nat'l Rep. Bank*, 210 B.R. 456, 459 (Bankr.N.D.Ill.1997)). If this were not the case, "creditors would be reluctant to negotiate loan work-outs with financially troubled debtors because taking collateral in excess of their loan would expose them to substantial risk over and above the amount of the debt." *Id.*

In the securities and purchase agreement, Skye International, Moore, and Trojan agreed that $600,000 represented the fair market value of the loan. The value of the security interest granted to Moore and Trojan can be no more than $600,000, the amount of the loan. *See Hooper*, 104 S.W.3d at 86. In total, Moore and Trojan loaned $600,000 to Skye International. Thus, Moore and Trojan gave reasonably equivalent value as a matter of law.

## Civil Conspiracy

■ In their motion for summary judgment, appellees alleged there was no evidence to support the elements of Yokogawa's civil conspiracy claim. Initially, Yokogawa contends the trial court erred in granting the no-evidence motion for summary judgment because the discovery period had not expired. When a party asserts that it has not had an adequate time for discovery before a summary judgment

hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco, Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 647 (Tex.1996). Yokogawa did not file a motion for continuance. Yokogawa attached its attorney's affidavit to its response to the motion for summary judgment. The affidavit sets forth the discovery deadline but fails to explain the need for further discovery. Accordingly, we hold that Yokogawa has waived its complaint that the no-evidence motion for summary judgment was premature.

We turn now to the propriety of granting summary judgment on the civil conspiracy claim. In *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996), the Texas Supreme Court held that civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. Because we have concluded that the trial court properly granted summary judgment in Skye International's favor on the fraudulent transfer claim, we conclude that summary judgment on the civil conspiracy claim was also proper. We overrule Yokogawa's second point of error.

We affirm the trial court's judgment.