**Affirmed as Modified; Opinion Filed May 15, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01366-CV

**CHALLENGER GAMING SOLUTIONS, INC. AND
THE ACCENT GROUP, INC., Appellants**

**V.**

**KAREN EARP, Appellee**

**On Appeal from the 429th Judicial District Court
Collin County, Texas
Trial Court Cause No. 429-01797-2010**

## OPINION

Before Justices Moseley, Bridges and Lang
Opinion by Justice Lang

Challenger Gaming Solutions, Inc. and The Accent Group, Inc. (collectively, "Challenger") sued Karen Earp under the Uniform Fraudulent Transfer Act ("UFTA") following default by Earp's ex-husband on a loan from Challenger and his transfer of certain funds to Earp. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-24.013 (West 2009). Contending the transfer of the funds to Earp constituted a fraudulent transfer under the UFTA, Challenger sought to set aside the conveyance of funds and recover the $62,000 balance due on the loan.

After Earp's ex-husband was nonsuited by Challenger because of its inability to secure service, Earp moved to designate her ex-husband as a responsible third party pursuant to chapter

1

33 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (West Supp. 2012). Over Challenger's objection, the trial court granted the motion and submitted a proportionate responsibility question to the jury.[1]

The jury found in favor of Challenger, awarded $62,000 in damages, and apportioned fifty percent of the responsibility for the damages to Earp and the other fifty percent to her ex-husband. In accordance with the jury's verdict, the trial court rendered judgment against Earp in the amount of $31,000.

The question we must decide is whether the proportionate responsibility statute applies to an UFTA claim. We conclude it does not. Accordingly, we modify the trial court's judgment to reflect judgment against Earp in the amount of $62,000. As modified, we affirm the judgment.

## I.    BACKGROUND

Only a partial reporter's record was filed in this case, but the facts as recited by the parties in their briefs and Challenger's live pleading at trial are not disputed. *See* TEX. R. APP. P. 38.1(g). According to the parties, the loan from Challenger was obtained in 2007 while the Earps were married. Shortly after the loan was obtained, and while still married, the Earps settled a lawsuit they brought against a third party unrelated to this case. The case was settled

---

[1] The jury question and answer read as follows:

QUESTION 3:

You should only assign percentages to those you found caused the damages. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable is not necessarily measured by the number of acts or omissions found.

For those found by you to have caused damages to The Accent Group, Inc. and/or Challenger Gaming Solutions, Inc., find the percentage caused by:

a.   Karen Earp              50%
b.   Bobby Earp              50%

for approximately $1.1 million, with an initial payment made to the Earps in the amount of $200,000 and the remainder to be paid to the Earps over a period of five years.

About six months after settlement of the lawsuit, the loan owed to Challenger went into default, and the Earps divorced. Under the divorce decree, Earp's ex-husband was ordered to assume all the couple's debts and Earp was awarded all the community assets, including the settlement proceeds.

Challenger brought its claim against Earp approximately one year later, seeking to void the transfer of the settlement proceeds to the extent necessary to recover the balance due on the loan. Challenger initially included Earp's ex-husband as a defendant in the suit, but nonsuited him after service on him could not be obtained. Upon Earp's motion and over Challenger's objection, Earp's ex-husband's was designated as a responsible third party.

At trial, the jury was charged as to questions about whether the transfer to Earp from her ex-husband was a fraudulent transfer. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005, 24.006. Also, the jury was charged to determine if Earp held "money that, in equity and good conscience, belong[ed] to [Challenger] for [its] damages." The jury determined she did and specifically found she held the $62,000 due on the loan. However, as indicated above, the jury apportioned only fifty percent of the liability for the damages to Earp. The other fifty percent was apportioned to her ex-husband. Judgment was rendered on the verdict and Earp's liability was adjudged to be $31,000.

## II.    APPLICABLE LAW

### A.  Proportionate Responsibility and Responsible Third Party

The proportionate responsibility statute, as set forth in chapter 33 of the civil practice and remedies code, provides a framework for apportioning percentages of responsibility in the

3

calculation of damages in any case in which more than one person, including the plaintiff, is alleged to have caused or contributed to cause the harm for which recovery of damages is sought. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West 2008); *JCW Elec., Inc. v. Garza*, 257 S.W.3d 701, 702 (Tex. 2008). It applies in "any cause of action based on tort," including claims for negligence, fraud, products liability, and "any other conduct that violates an applicable legal standard." TEX. CIV. PRAC. & REM. CODE ANN. § 33.002; *Werner v. KPMG, LLP*, 415 F. Supp. 2d 688, 703 (S.D. Tex. 2006); *JCW Elec.,* 257 S.W.3d at 705. Consistent with the tenet of tort law that a party's liability arises from its own injury-causing conduct, its purpose is to hold each party "responsible [only] for [the party's] own conduct causing injury." *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 505 (Tex. 2010) (quoting *F.F.P. Operating Partners, LP v. Duenez*, 237 S.W.3d 680, 690 (Tex. 2007)). Accordingly, the statute requires the trier of fact to determine the percentage of responsibility of each claimant, defendant, settling person, and responsible third party who has been designated in accordance with the statute.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003.

Under section 33.011, a responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of

---

[2] Section 33.003(a) reads as follows:

The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

    (1)   each claimant;
    (2)   each defendant;
    (3)   each settling person; and
    (4)   each responsible third party who has been designated under section 33.004.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a).

4

these." *See id.* § 33.011(6). A defendant may designate a responsible third party, and potentially reduce the percentage of his own liability to the plaintiff, by filing a motion for leave with the trial court. *See id.* § 33.004(a) (West Supp. 2012); *J.M.K., Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 201 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court must grant leave unless an objection is filed within fifteen days and the defendant has failed to plead sufficient facts concerning the alleged responsibility of the third party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(f), (g); *Kimbrell v. Molinet*, 288 S.W.3d 464, 469 (Tex. App.—San Antonio 2008), *aff'd*, 356 S.W.3d 407 (Tex. 2011).

Although the proportionate responsibility statute by its terms applies to "any cause of action based on tort," it has been found not to apply to statutory tort claims where the statute contains its own separate and conflicting legislative fault-allocation scheme. *See Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex. 2004) (concluding proportionate responsibility statute does not apply to conversion claims under article 3 of the Uniform Commercial Code because article 3 has its own loss-allocation scheme). It has also been found not to apply in vicarious liability cases, such as the theory of respondeat superior for an employer/employee, where a person is held responsible for the wrongful conduct of another based solely on the nature of their relationship. *See Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 125-26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Bedford v. Moore, LLP*, 166 S.W.3d 454, 460 (Tex. App.—Fort Worth 2005, no pet.) (citing *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, pet. denied)).

### B. Uniform Fraudulent Transfer Act

The UFTA was enacted to establish uniformity among the states with respect to fraudulent transfers. *See* TEX. BUS. & COM. CODE ANN. § 24.012. Its purpose is to prevent

debtors from defrauding creditors by placing assets beyond their reach. *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex. App.—Dallas 2005, no pet.). Consistent with this purpose, the UFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *See* TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009; *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). As codified in chapter 24 of the Texas Business and Commerce Code, the UFTA delineates what types of transfers and obligations are fraudulent, enumerates the remedies available to a creditor, prescribes the measure of liability of a transferee, and lists the defenses and protections afforded a transferee. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005-.006, 24.008-.009; UNIFORM FRAUDULENT TRANSFER ACT, prefatory note & cmts. ("UFTA note") at 3-5 & §§ 7-8 (1984).

Sections 24.005 and 24.006 delineate the types of transfers and obligations that are fraudulent. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005-.006. Except for a preferential transfer[3] to an insider under section 24.006(b), which requires additional proof that the insider had "reasonable cause to believe the debtor was insolvent," a fraudulent transfer is established either by showing the debtor intended to defraud the creditor or made the transfer without receiving reasonably equivalent value.[4] *See id.*

---

[3] A preferential transfer is "a transfer by an insolvent debtor for or on account of an antecedent debt." *See* UFTA note § 5 cmt.(2).

[4] Specifically, under section 24.005(a), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .

    (1)   with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2)   without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor

       (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

       (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The fundamental remedy for a creditor who establishes a fraudulent transfer is recovery of the property from the person to whom it has been transferred. NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS, FRAUDULENT TRANSFER ACT SUMMARY (2013), *available at* http://uniformlaws.org/ActSummary.aspx?title=Fraudulent%20Transfer%20Act. Under section 24.008, a defrauded creditor may be entitled to equitable relief in the form of:

(1) an avoidance of the transfer or obligation to the extent necessary to satisfy his claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee; or

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure

(a) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b) the appointment of a receiver to take charge of the asset transferred or other property of the transferee; or

(c) any other relief the circumstances may require.

*See id.* § 24.008 (a). If the creditor has previously obtained a judgment against the debtor, the creditor may also levy execution on the asset transferred or its proceeds. *Id.* § 24.008(b). Additionally, under section 24.009(b), a creditor who obtains an avoidance of the transfer pursuant to section 24.008 may recover a money judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. *Id.* § 24.009(b). The

---

TEX. BUS. & COM. CODE ANN. § 24.005(a).

Section 24.006 identifies two types of transfers that are fraudulent as to present creditors. It provides as follows:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

judgment may be rendered against the first transferee, the person for whose benefit the transfer was made, or any subsequent transferee other than a good faith transferee who takes for value or from any subsequent transferee. *Id.* Section 24.009 also delineates the defenses and protections afforded a transferee.[5]

[5] Specifically, section 24.009 provides the following defenses and protections:

    (a)    A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

        \*\*\*

    (c)  (1) Except as provided by Subdivision (2) of this subsection, if the judgment under Subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

    (c)  (2) The value of the asset transferred is not to be adjusted to include the value of improvements made by a good faith transferee, including:

        (A) physical additions or changes to the asset transferred;

        (B) repairs to the asset;

        (C) payment of any tax on the asset;

        (D) payment of any debt secured by a lien on the asset that is superior or equal to the rights of a voiding creditor under this chapter; and

        (E) preservation of the asset.

    (d)  (1) Notwithstanding voidability of a transfer or an obligation under this chapter, a good faith transferee or obligee is entitled, at the transferee's or obligee's election, to the extent of the value given the debtor for the transfer or obligation, to:

        (A) a lien, prior to the rights of a voiding creditor under this chapter, or a right to retain any interest in the asset transferred;

        (B) enforcement of any obligation incurred; or

        (C) a reduction in the amount of the liability on the judgment.

      (2) Notwithstanding voidability of a transfer under this chapter, to the extent of the value of any improvements made by a good faith transferee, the good faith transferee is entitled to a lien on the asset transferred prior to the rights of a voiding creditor under this chapter.

    (e)  A transfer is not voidable under Section 24.005(a)(2) or Section 24.006 of this code if the transfer results from:

      (1) termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law; or

      (2) enforcement of a security interest in compliance with Chapter 9 of this Code [TEX. BUS. & COM. CODE ANN. § 9.101 et seq. (West 2011 & Supp. 2012)].

    (f) A transfer is not voidable under Section 24.006(b) of the code:

A fraudulent transfer under the UFTA is a tort. *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas 2005, no pet.).

## C.  STANDARD OF REVIEW

Whether the proportionate responsibility statute applies in an UFTA suit is a question of law, which an appellate court reviews de novo. *MCI Sales and Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010); *Cressman Tubular Prods. Corp. v. Kurt Wiseman Oil & Gas Ltd.*, 322 S.W.3d 453, 459-60 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  In construing a statute, the court's primary objective is to give effect to the legislature's intent, considering the purpose of the statute, its legislative history, and the consequences of a proposed construction. *See* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2013); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009).  The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to an absurd result. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).  When two statutes conflict and cannot be reconciled, the specific statute controls over the general one. *See* TEX. GOV'T CODE ANN. § 311.026(b); *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006).

---

(1) to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien;

(2) if made in the ordinary course of business or financial affairs of the debtor and the insider; or

(3) if made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

*See* TEX. BUS. & COM. CODE ANN. § 24.009.

## III.    APPLICATION OF LAW TO FACTS

The proportionate responsibility statute provides a means of apportioning responsibility for damages in tort cases between parties alleged to have contributed to the harm for which damages are sought.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.002, 33.003.  However, the statute does not to apply to statutory tort claims where the statute contains its own separate and conflicting legislative fault-allocation scheme.  *See Sw. Bank*, 149 S.W.3d at 111.  Challenger contends the statutory scheme for redress of the UFTA, a tort, conflicts with the general fault-allocation scheme in the proportionate responsibility statute.  Specifically, Challenger notes the UFTA authorizes both equitable relief and money damages and enumerates the defenses and protections afforded transferees.  According to Challenger, the equitable remedies allowed cannot be apportioned, and the defenses and protections afforded transferees do not include a provision allowing for the apportionment of responsibility based on fault.  Challenger contends these provisions underscore the UFTA's "overriding" purpose of providing a complete remedy to creditors and applying the proportionate responsibility statute would defeat this purpose.  Earp, on the other hand, contends without elaborating that because the UFTA's statutory scheme does not specifically contain a fault-allocation scheme, the proportionate responsibility statute applies.  Both parties rely on *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008) and *Southwest Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104 (Tex. 2004).[6]  In each of these

---

[6] At oral argument, Challenger also cited *Kerrville HRH, Inc. v. Kerrville*, 803 S.W.2d 377 (Tex. App.—San Antonio 1990, writ denied), *Duperier v. Texas State Bank*, 28 S.W.3d 740 (Tex. App.—Corpus Christi 2000, pet. dism'd), and *GE Capital Commercial v. Worthington National Bank,* 2011 WL 5025153 (N.D. Tex. Oct. 20, 2011).  In *GE Capital*, the court summarized *Kerrville* and *Duperier* as standing for the proposition that proportional liability is inapplicable to fraud claims under the Texas Securities Act and the Fraud In Real Estate and Stock Transactions provision of chapter 27 of the Texas Business and Commerce Code because it would (1) abrogate the effect of a statutory defense and (2) negligence is not a defense to fraud.  2011 WL 5025153 at *6.  The court concluded further that the doctrine of unclean hands applied in an UFTA suit.  *Id.*  Because *Kerrville* and *Duperier* predate the supreme court decisions in *Southwest Bank* and *JCW Electronics*, and because the issue at hand does not involve the doctrine of unclean hands, we focus our discussion on *Southwest Bank* and *JCW Electronics*.

Earp cites additionally to *Villarreal v. Wells Fargo Brokerage Services, LLC*, 315 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  The *Villarreal* court concluded that the proportionate responsibility statute applied to claims brought under the Texas Securities Act and the Texas Trust Act because the appellant did not assert in his motion for summary judgment that the claims were not based in tort or the subject

cases, the courts considered the applicability of the proportionate responsibility statute to statutory tort claims under the Texas Uniform Commerce Code ("UCC").

*Southwest Bank* involved a conversion action under article 3 of the UCC. *Sw. Bank*, 149 S.W.3d at 104. Information Support Concepts ("ISC") sued Southwest Bank for conversion after Southwest Bank accepted for deposit into the personal account of an ISC employee several checks that were payable to ISC, but did not bear an ISC endorsement or signature. *Id.* at 104-05. Southwest Bank moved to join the employee as a responsible third party pursuant to the proportionate responsibility statute, but the trial court denied the motion. *Id.* at 105. On appeal, Southwest Bank argued that the employee shared responsibility for the conversion and should be proportionately liable. *Id.* The court of appeals rejected Southwest Bank's argument and affirmed the trial court's judgment. Affirming the court of appeals, the supreme court observed that article 3 "contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships," including "its own comparative negligence provisions that apply to some, but not all, conversion claims." *Id.* at 107. As examples, it cited section 3.416, which allows a bank that mistakenly pays a thief who presents a stolen check to sue the thief for breach of the transfer warranty, and section 3.405, which allows a payor to defend against a conversion action, brought by a payee whose indorsement has been forged, by proving the payee's negligence contributed to the forgery. *Id.* (citing TEX. BUS. & COM. CODE ANN. §§ 3.405, 3.416). The court concluded these comparative negligence provisions "evince a shift" from the strict liability scheme that imposed the entire liability on a bank proven to have been negligent to a scheme based on fault. *Id.* at 108 (quoting James J. White & Robert S. Summers,

statutes contained a separate and conflicting legislative fault section. 315 S.W.3d at 124-25. We conclude *Villarreal* is inapplicable because the case was disposed of by summary judgment rather than a trial on the merits.

11

Uniform Commercial Code § 19-3(4ᵗʰ ed. 1995), "Under the old Code, proof that the bank was negligent generally meant that the entire loss fell on the bank, not the depositor, regardless of the depositor's negligence. Now, the depositor will seldom be able to cast the entire loss on the bank; the loss will be shared."). Further, the supreme court noted that although not all UCC-based conversion claims are subject to the contributory negligence provisions in article 3, applying the proportionate responsibility statute to article 3 claims "could disrupt the UCC's carefully allocated liability scheme and would create a "unique" liability scheme for UCC-based conversion claims in Texas, "thwarting" the UCC's underlying purpose of "mak[ing] uniform the law among the various jurisdictions." *Id.* at 108-09, 110-11. The court concluded that because the provisions of article 3 are more specific than the proportionate responsibility statute, the proportionate responsibility statute did not apply. *Id.* at 111.

The statutory cause of action at issue in *JCW Electronics* was a claim for breach of implied warranty under article 2 of the UCC. 257 S.W.3d at 702. Garza sued JCW and the City of Port Isabel after her son was found in a Port Isabel jail cell dead, hanging from a cord of a telephone provided by JCW. *Id.* Because Garza sought damages for the death of her son, her son's responsibility for his death was at issue under the proportionate responsibility statute which includes the decedent within the definition of "claimant" in any suit involving death. *See id.* at 707 (citing TEX. CIV. PRAC. & REM. CODE ANN. 33.011(1)). A jury found generally in Garza's favor, but also found her deceased son sixty percent liable. *Id.* at 703. The question presented to the supreme court was whether the proportionate responsibility statute should apply to Garza's implied warranty claim. *See id.* at 702. Comparing article 2 to article 3, the court noted that, while article 2 allows for recovery of consequential damages for "injury to person or property proximately resulting from any breach of warranty," it does not contain a comprehensive fault

12

scheme apportioning liability like article 3. *Id.* at 706. The court further noted that, as a result, it "and many other [courts] have historically included breach of implied warranty claims as part of the mix when comparing fault in tort-based litigation." *Id.* at 707. As examples, the court cited *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), where the court allowed "comparison of plaintiff's conduct . . . with the conduct or product of a defendant, [regardless of] whether the suit combined crashworthiness or other theories of strict products liability, breach of warranty, or negligence," and *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex. 1978), where the court concluded that a buyer, whose negligence in conjunction with the unsuitable product proximately caused the damage in an implied warranty claim, "could not recover consequential damages to the extent that the buyer's negligence or fault was a concurring proximate cause of such damages." *Id.* Based on article 2's liability scheme and case law, the court concluded that the proportionate responsibility statute applied to Garza's implied warranty claim. *Id.* at 706-07.

*Southwest Bank* and *JCW Electronics* are not dispositive of the issue before us. Both involved statutory provisions specifically defining different parties' conduct and liability, and claims where it was alleged the conduct of at least two individuals proximately caused the damages. As such, they lend themselves to a fault-allocation scheme. Although the court in *Southwest Bank* declined to apply the separate proportionate responsibility provisions of chapter 33 of the civil practice and remedies code, it expressly noted the claim was subject to the fault allocation scheme in article 3 of the UCC. Of course, the claim in *JCW Electronics* was found to be a proper fit for chapter 33's proportionate responsibility provisions.

In contrast to the UCC article 2 warranty claim in *JCW Electronics* and the UCC article 3 conversion claim in *Southwest Bank*, an UFTA claim does not lend itself to a fault-allocation

13

scheme. Rather, the focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven. Specifically, the UFTA provides several different forms of equitable relief designed to follow and reach assets. *See*, *e.g.*, TEX. BUS. & COM. CODE ANN. § 24.008(a)(2) (providing for attachment against the asset transferred or other property of the transferee), § 24.008(a)(3) (providing for an injunction against further disposition by the debtor, a transferee, or both, of the transferred asset or other property). Also, the UFTA provides for a money judgment that does not exceed the value of the asset transferred or the amount necessary to satisfy the creditor's claim. *See id.* § 24.009(b). Further, the UFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made, but does not distinguish the forms of relief based on culpability. *See id.* §§ 24.008, 24.009; *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984) (addressing UFTA's predecessor, the Uniform Fraudulent Conveyance Act). That is, "[i]t operates against the title of an 'innocent' transferee who has not paid value just a fully as against the title of a transferee who has participated in a fraud."[7] *Mack*, 737 F.2d at 1361. Although the UFTA addresses the debtor's actions in the five types of transfers it identifies as fraudulent[8] and the transferee's actions in one of the five types of transfers,[9] it contains no words such as "damages," "liable," or "actionable" and does not itself prohibit any transfers or render the making or receiving of them illegal or wrongful. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-.012; *Mack*, 737 F.2d at 1361. Accordingly, the proportionate responsibility statute has no applicability in an UFTA claim. *See Galbraith Eng'g*, 290 S.W.3d at 868 n.6 ("As one commentator has observed '[t]he thrust of the

---

[7] Under section 24.006(b), a transfer is fraudulent as to a creditor whose claim arose before the transfer when, among other things, an "insider" transferee "had reasonable cause to believe that the debtor was insolvent." TEX. BUS. & COM. CODE ANN. § 24.006(b). Thus, this section identifies culpability, to some extent, of a transferee. However, the statute does not shift or apportion liability based on such knowledge.

[8] *See id.* §§ 24.005-.006.

[9] *See id.* § 24.006(b).

2003 statute [chapter 33] is that the jury should allocate responsibility among all persons who are responsible for the claimant's injury.'") (quoting 19 WILLIAM V. DORSEANO III, TEXAS LITIGATION GUIDE § 291.03[2][b][i] at 291-24.1 (2009)).

Considering the plain meaning of the text and purpose of the UFTA, we conclude the proportionate responsibility statute conflicts with the liability scheme in the UFTA and cannot be reconciled. Accordingly, we conclude the proportionate responsibility statute does not apply to an UFTA claim.

## IV. CONCLUSION

Having concluded the proportionate responsibility statute does not apply to an UFTA claim, we resolve Challenger's sole issue in its favor and modify the trial court's judgment to reflect judgment against Earp in the amount of $62,000. As modified, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

111366F.P05

15



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHALLENGER GAMING SOLUTIONS, INC. AND THE ACCENT GROUP, INC., Appellants

No. 05-11-01366-CV        V.

KAREN EARP, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01797-2010.
Opinion delivered by Justice Lang, Justices Moseley and Bridges participating.

In accordance with this Court's opinion of this date, we **MODIFY** the trial court's judgment to reflect judgment against Karen Earp in the amount of $62,000.

We **ORDER** that, as modified, the judgment of the trial court is **AFFIRMED**.

We **ORDER** that appellants Challenger Gaming Solutions, Inc. and The Accent Group, Inc. recover their costs of this appeal from appellee Karen Earp.

Judgment entered this 15th day of May, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE