In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00099-CV
_____

FREDDY WIRT, Appellant

V.

LABELLECO FAB, LLC, Appellee

On Appeal from the County Court at Law No. 1
Jefferson County, Texas
Trial Cause No. 130,563

**MEMORANDUM OPINION**

The underlying dispute between appellant Freddy Wirt ("Wirt") and appellee LaBelleCo Fab, LLC ("LaBelleCo") arises from an interpleader action. Plant & Machinery, Inc. ("P&M") interpleaded $35,000.00 in proceeds from an auction held by its client Wirt. LaBelleCo claimed that because it had a final money judgment and a writ of execution, it was entitled to the auction proceeds to satisfy the

1

judgment; however, Wirt claimed he was entitled to the proceeds as a bona fide purchaser for value with no notice of the property being encumbered by a judgment.

Wirt subsequently made claims against LaBelleCo for declaratory judgment, recovery of attorney's fees, release of funds on deposit in the registry of the court, as well as tortious interference with a contract. LaBelleCo made a third-party claim against Wirt under Chapter 24 of the Texas Business & Commerce Code, for fraud, constructive fraud, and under the Uniform Fraudulent Transfer Act.

The parties filed competing motions for summary judgment. The trial court signed an interlocutory order granting LaBelleCo's traditional motion for summary judgment and denying Wirt's motion for summary judgment and release of funds on deposit in the court's registry. In a final judgment, the trial court ordered the $35,000.00 in the court's registry be made payable to LaBelleCo and awarded LaBelleCo attorney's fees.

Wirt challenges the trial court's rendition of a summary judgment in favor of LaBelleCo. In three issues, Wirt argues the trial court erred (1) in granting judgment in favor of LaBelleCo and against Wirt; (2) in failing to determine that Wirt is a bona fide purchaser in good faith and for fair value without actual or constructive notice of outstanding equity or an adverse interest or title and is entitled to the auction proceeds on deposit in the registry of the court; and (3) in failing to render judgment

2

against LaBelleCo for tortious interference with a contract. As discussed more fully below, we conclude the trial court erred in granting LaBelleCo's motion for summary judgment and in denying Wirt's claim that he was a bona fide purchaser of the property at issue. Therefore, we reverse the trial court's judgment for LaBelleCo and render the judgment the trial court should have rendered to require that the proceeds that were placed in the court's registry be released to Wirt.

## Background

On or about August 23, 2016, Howard Hilborn ("Hilborn") sold to Gator Specialty Services, LLC, ("Gator") three tracts of real property in Harris County, Texas, more commonly known as 2859 Westside Drive, Pasadena, Texas (the "Real Property") in exchange for cash and a promissory note in the original principal amount of $866,250.00. The note was secured by a first and superior vendor's lien retained in a special warranty deed with vendor's lien and by a first lien deed of trust, both filed on August 24, 2016, in the Harris County real property records.

After Gator defaulted on the note, Hilborn foreclosed upon and acquired Gator's interest in and to the Real Property by virtue of a foreclosure sale deed dated January 2, 2018, which was filed the same day in the Harris County real property records. The foreclosure sale amount was $1,027,000.00.

3

On January 9, 2018, the County Court at Law No. 1 of Jefferson County signed a final judgment in favor of LaBelleCo against Gator for damages, interest, attorney's fees, and costs of court. The final judgment ordered that LaBelleCo have all writs and processes necessary to enforce the final judgment. On February 14, 2018, the Jefferson County Clerk issued an abstract of judgment for LaBelleCo's final judgment against Gator. However, the abstract of judgment was not filed in the real property records of Jefferson County or the real property records of Harris County.

On or about April 5, 2018, Freddy Wirt purchased from Howard Hilborn the Real Property by virtue of a special warranty deed with vendor's lien dated April 5, 2018, and filed of record on April 9, 2018, in the Harris County real property records. The special warranty deed with vendor's lien also contained a clause which identified exceptions to the conveyance and warranty, which included "[l]iens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken" as well as "all rights, obligations, and other matters arising from and existing by reason of the Harris County Records[.]" Through a bill of sale dated April 5, 2018, Wirt also purchased "[a]ll items of personal property, both tangible and intangible (excluding cash), affixed or attached to, or placed or situated on, or used or acquired in any way

4

whatever in connection with the use, enjoyment, occupancy, or operation of the Real Property, including, without limitation, all equipment, furniture, building supplies, appliances, machinery, and fixtures owned by Seller and located in or on or used in connection with the Real Property or the operations thereon" (the "Personal Property").

On February 14, 2019, LaBelleCo obtained a writ of execution from the Jefferson County Clerk, seeking to collect on its money judgment against Gator. On February 19, 2019, LaBelleCo prepared correspondence to Harris County Constable Phil Sandlin, requesting that the constable "serve the Writ on Gator Specialty Services, LLC, at 2859 Westside Drive, Pasadena, Texas 77502 on Thursday, February 19, 2019 [sic] before its 10:00 a.m. auction."

Wirt and Plant & Machinery, Inc. entered into an agreement to sell Wirt's Personal Property on February 21, 2019, in Harris County, Texas. On the day of the auction, the constable, who was accompanied by a representative of LaBelleCo, attempted to serve the writ. Wirt advised the constable that he was the rightful owner of the property being sold because he purchased the property. Wirt gave the bill of sale and special warranty deed to representatives of P&M and LaBelleCo. The auction then proceeded.

5

The gross sales proceeds from the auction were $198,974.00. After commission and expenses, P&M tendered $129,788.60 in proceeds to Wirt. This amount excludes the disputed proceeds that were deposited into the court's registry. On March 27, 2019, P&M filed an interpleader requesting that $35,000.00 in disputed proceeds from the auction be deposited into the registry of the Jefferson County Court. P&M asserted that it was subject to rival claims to the same funds or property: LaBelleCo claimed that the property sold at the auction belonged to Gator and because LaBelleCo holds a judgment and writ of execution, it is entitled to $35,000.00 in auction proceeds to satisfy the judgment and attorneys' fees and court costs, while Wirt claimed to be a bona-fide purchaser with no notice of the property being encumbered by a judgment. On April 11, 2019, the trial court granted P&M's request for the $35,000.00 funds at issue to be placed in the Court Registry.

Subsequently, on June 7, 2019, Wirt filed a petition in intervention for release of funds deposited into the court registry, asserting that he was an innocent purchaser for value and without actual or constructive notice of LaBelleCo's claim. LaBelleCo responded with only a general denial, and on July 3, 2019, LaBelleCo filed his original "**Plaintiff's Verified Third-Party Petition Against Freddy Wirt and Howard Hilborn, or Alternatively Counter-Claim for Damages, Statutory Relief and Injunctive Relief**." LaBelleCo alleged claims of fraud, constructive

6

fraud in violation of LaBelleCo's right as a judgment creditor, and violations of the Texas Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code Ann. §§ 24.001-.013. Subsequently, on July 24, 2019, LaBelleCo filed "**Plaintiff's First Amended Verified Third-Party Petition Against Freddy Wirt and Howard Hilborn**" again alleging the same causes of action.

On January 8, 2020, Wirt filed his amended petition in intervention against LaBelleCo making claims against LaBelleCo for tortious interference with a contract and for declaratory judgment as to his entitlement to the $35,000.00 in auction proceeds, as well as a claim for attorney's fees and exemplary damages. LaBelleCo, in turn on April 29, 2020, filed a "Motion for Release of Funds Deposited into the Court Registry." On May 15, 2020, LaBelleCo also filed a general denial and asserted affirmative defenses of collateral estoppel and lack of jurisdiction. The trial court denied LaBelleCo's Motion for Release of Funds on June 1, 2020, finding that LaBelleCo had failed to establish any basis for entitlement to the funds. LaBelleCo also filed on May 14, 2020, a "Motion to Dismiss its Verified Third-Party Petition Against Freddy Wirt and Howard Hilborn, or Alternatively Counter-Claim for Damages, Statutory Relief and Injunctive Relief, Without Prejudice," which the trial court also granted on June 1, 2020, by a document titled "**Order Granting Plaintiff's Motion to Dismiss its Verified Third-Party Petition Against Freddy**

**Wirt and Howard Hilborn, or Alternatively Counter-Claim for Damages, Statutory Relief and Injunctive Relief, Without Prejudice**" It should be noted that the above quoted Order bore the same title of LaBelleCo's original Third-Party Petition, but not its "**Plaintiff's First Amended Verified Third-Party Petition Against Freddy Wirt and Howard Hilborn**." Finally, LaBelleCo and Howard Hilborn filed a joint motion to dismiss with prejudice, asking the trial court to dismiss all their claims and causes of action against each other, which was granted by the trial court.

Subsequent to the filings referenced above, Wirt and LaBelleCo agreed to file cross motions for summary judgment to address the remaining claims and issues.[1] In his motion for final summary judgment and release of funds on deposit in the court registry, Wirt sought a declaratory judgment and release of funds on deposit in the registry of the court, as well as tortious interference with a contract, and entitlement to actual damages, exemplary damages and attorney's fees.

In requesting declaratory relief, Wirt asked the trial court to declare that he was a bona fide purchaser who purchased the disputed property in good faith for

---

[1]With regard to the Order Granting Plaintiff's Motion to Dismiss signed by the trial court on June 1, 2020 referenced above, there is a question of whether the original Third-Party Petition was dismissed, but not the First Amended Third-Party Petition. Regardless, Wirt treated LaBelleCo's petition as LaBelleCo's live pleading when he filed his motion for summary judgment.

8

value without notice or knowledge of LaBelleCo's claim, and to declare that any and all rights or interests of LaBelleCo in or to the Real Property and Personal Property or the proceeds from the sale of either were extinguished by virtue of Howard Hilborn's foreclosure sale against Gator before LaBelleCo obtained its final judgment against Gator. According to Wirt, since LaBelleCo obtained a final judgment against Gator seven days after Hilborn foreclosed on Gator's interests in the disputed property, any alleged interest LaBelleCo had in Gator's assets by virtue of a judgment would only exist once a judgment against Gator became final. And, because LaBelleCo never recorded any abstract of judgment in Harris County before the disputed property was sold to Wirt, there was no instrument of record that provided Wirt with actual or constructive notice either of LaBelleCo's claims or that it had obtained a judgment against Gator.

Wirt asserted that, as an experienced purchaser, he knowingly and intentionally paid good and valuable consideration – an additional $150,000.00 – to Hilborn for the Personal Property to be included in the purchase of the Real Property. Similarly, neither he nor Hilborn had any involvement with or interest in Gator, so they couldn't be considered "insiders" or "affiliates" of Gator as that term is used in the Uniform Fraudulent Transfer Act. *See id*. § 24.002(1), (7).

As to his claim for tortious interference with a contract, Wirt asserted that LaBelleCo had actual and constructive notice of the foreclosure sale by Hilborn and that LaBelleCo had no right or interest superior to Wirt as the purchaser and successor-in-interest in the disputed property to Hilborn. Because of this, Wirt alleged that LaBelleCo had no valid claim to the proceeds of the sale in the P&M Auction that are tied to the disputed property he sold in the auction. So, when LaBelleCo made claims to the auction proceeds, Wirt alleged LaBelleCo interfered with Wirt's auction contract with P&M by requiring P&M to file an original interpleader with respect to $35,000.00, the amount tied to the proceeds from the disputed property that P&M sold.

Wirt's motion for final summary judgment and release of funds on deposit in the court registry also requested exemplary damages under sections 41.003 and 41.011 of the Texas Civil Practice and Remedies Code because of the willful, malicious, and intentional conduct of LaBelleCo for tortiously interfering with the Wirt's auction contract with P&M, despite LaBelleCo having actual or constructive knowledge of the actual status and rights of the affected parties. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 41.003, 41.011. Wirt also requested attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code and Chapter 24 of

10

the Texas Business and Commerce Code. *See id*. § 37.009; Tex. Bus. & Com. Code Ann. § 24.013.

Wirt attached the following evidence to his motion for summary judgment: (1) the affidavit of Freddy Wirt; (2) the April 5, 2018 special warranty deed with vendor's lien; (3) the April 5, 2018 bill of sale; (4) the affidavit of Howard Hilborn; (5) the August 23, 2016 deed of trust; (6) the January 2, 2018 foreclosure deed; (7) Freddy Wirt's deposition transcript; and (8) the declaration of attorney Jarrett T. LaRochelle.

In LaBelleCo's traditional motion for summary judgment, it asserted that LaBelleCo, as a final judgment creditor, had a right to recover the interpleaded funds. According to LaBelleCo, Wirt is not entitled to recover the interpleaded funds because Wirt cannot prove he is an innocent purchaser, or bona fide purchaser, for value of all of Gator's assets. Specifically, LaBelleCo claims that Wirt's deposition testimony establishes that Wirt only purchased Gator's real estate and one building in good faith, that Wirt admitted he did not purchase Gator's personal property assets for any value, and that Wirt had actual knowledge of LaBelleCo's final judgment lien because the constable attempted to enforce the final judgment lien before the commencement of the P&M auction. By proceeding with the P&M auction,

11

LaBelleCo asserted that Wirt violated the UFTA. LaBelleCo sought recovery of its attorneys' fees under its theory that Wirt had violated the UFTA.

LaBelleCo asked the court to dismiss Wirt's causes of action against LaBelleCo for tortious interference because Wirt sued LaBelleCo for tortious interference based on LaBelleCo utilizing the legal process to attempt to collect its final judgment. LaBelleCo also asked the trial court to dismiss Wirt's claim for recovery of attorney's fees on the tortious interference cause of action.

Additionally, LaBelleCo asked the court to dismiss Wirt's claim for exemplary or punitive damages against LaBelleCo. It argued that Wirt did not assert a claim involving allegations of fraud, malice, or gross negligence against LaBelleCo, so Wirt, it concluded, did not have a basis in law or in fact to recover exemplary or punitive damages against it under Texas law.

LaBelleCo attached the following evidence to its motion for summary judgment: (1) the final judgment dated January 9, 2018 LaBelleCo obtained against Gator; (2) the abstract of judgment issued by the Jefferson County Clerk on February 14, 2018; (3) the writ of execution issued by the Jefferson County Clerk on February 14, 2019; (4) a letter dated February 19, 2019 from LaBelleCo asking the Harris County Constable to serve the writ of execution on Gator before the auction; (5) the April 5, 2018 special warranty deed with vendor's lien; (6) Freddy Wirt's deposition

12

transcript; (7) P&M's auction analysis; (8) the title insurance on the Real Property dated May 18, 2018; (9) the closing statement dated April 5, 2018; (10) the March 13, 2019 letter from Wirt to P&M's attorney regarding the Personal Property at 2859 Westside Drive; (11) the Harris County Appraisal District's 2019 appraisal for 2859 Westside Drive; (12) the P&M cosignor report; (13) the March 21, 2019 letter from P&M to Wirt containing a buyer list and list of tangible personal property sold at the auction; (14) the April 11, 2019 order granting P&M's request for the $35,000.00 to be placed into the Court Registry; and (15) the affidavit of attorney John S. Morgan.

Following a hearing, the trial court granted LaBelleCo's motion for summary judgment and denied Wirt's motion for final summary judgment and release of funds that as of January 13, 2022, were on deposit with the court.[2] In its order, the trial court ordered that the Jefferson County Clerk shall release the $35,000.00 in the

[2]The Clerk's Record doesn't show that the trial court signed an order withdrawing the interlocutory order it signed on June 1, 2020, which is titled "**Order Granting Plaintiff's Motion to Dismiss its Verified Third-Party Petition Against Freddy Wirt and Howard Hilborn, or Alternatively Counter-Claim for Damages, Statutory Relief and Injunctive Relief", Without Prejudice.**" (See footnote 1) However, since the trial court ruled on the parties cross-motions for summary judgment, which they filed after the trial court signed the June 1, 2020 Order, and because both parties treated LaBelleCo's Third Party Petition as LaBelleCo's live pleading in the respective cross-motions for summary judgment, which were also both filed months after June 1, 2020, we have implied that the parties tried the issues raised in LaBelleCo's pleadings by consent for the reasons explained in the opinion, just as if the trial court had signed an order withdrawing its June 1, 2020 interlocutory order of dismissal.

13

Court's registry by issuing a check made payable to LaBelleCo Fab, LLC, awarded LaBelleCo reasonable and necessary attorneys' fees, costs and expenses incurred at the trial court level, and awarded conditional appellate attorney fees to LaBelleCo. The trial court signed the final judgment on January 18, 2023.

Wirt filed a motion for new trial on January 28, 2022. The trial court allowed Wirt's motion for new trial to be overruled by operation of law. Tex. R. Civ. P. 329b(c), (e). This appeal followed.

## Standard of Review

We review appeals challenging rulings on motions for summary judgment de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022). "To prevail on a traditional motion for summary judgment, the movant must show no material fact issues exist and that it is entitled to judgment as a matter of law." *Id.*; Tex. R. Civ. P. 166a(c). We take as true all evidence favorable to the respondent, and we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

"On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022) (quoting *City of*

14

*Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000)). When the trial court grants one motion and denies the other, as is the case here, we "'determine all questions presented'" and "'render the judgment that the trial court should have rendered.'" *Id.* (quoting *City of Garland*, 22 S.W.3d at 356). When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment will be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *McCrea v. Cubilla Condo. Corp. N.V.*, 685 S.W.2d 755, 757 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987).

**Discussion**

In Wirt's first issue, he asserts that the trial court abused its discretion and erred in granting judgment in favor of LaBelleCo and against Freddy Wirt. In his second issue, Wirt complains that the trial court abused its discretion and erred in failing to determine and declare that Wirt is a bona fide purchaser in good faith for valuable consideration without actual or constructive notice of any outstanding equity or an adverse interest or title and is entitled to the auction proceeds on deposit

15

in the registry of the court. Because our analysis of issue one and issue two overlap, we will address these issues together.

At the outset of his brief, Wirt asserts that the court improperly granted judgment in favor of LaBelleCo because it did not have any live pleadings or claims for affirmative relief on file, and that the only claims on file by LaBelleCo were its general denial and affirmative defenses of collateral estoppel and lack of jurisdiction. Unpled claims or affirmative defenses may form the basis of summary judgment if the nonmovant does not object. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 n.1 (Tex. 2007) (per curiam); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) ("[U]npleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they [were] raised by the pleadings."). The movant must object to defeat a motion for summary judgment; otherwise, the issue will be tried by consent. *See Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.). "The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal." *Roark*, 813 S.W.2d at 495. Here, Wirt did not object or raise this issue in his response to its motion for summary judgment. We treat LaBelleCo's unpled claims as having been tried by consent. *See Mayes*, 236 S.W.3d at 756, n.1.

16

As part of his motion for summary judgment, Wirt sought a claim for declaratory judgment "as to his status as an innocent purchaser for value without notice of any claim Plaintiff LaBelleCo Fab, LLC, as to his purchase of the Real Property and Personal Property from Howard L. Hilborn, and as to his entitlement to the proceeds from the auction of the Personal Property." By granting summary judgment in favor of LaBelleCo, the trial court implicitly found that Wirt was not a bona fide purchaser, and that Wirt was not entitled to the proceeds from the auction, as the final judgment ordered the Jefferson County Clerk to release the $35,000.00 in disputed funds to LaBelleCo.

LaBelleCo obtained a money judgment against Gator on January 9, 2018. Execution is a method of enforcing a judgment. *See* Tex. R. Civ. P. 621; *Jong Ik Won v. Fernandez*, 324 S.W.3d 833, 834 (Tex. App.—Houston [14th Dist.] 2010, no pet.). To initiate an execution, a judgment creditor must obtain from a court a writ of execution that meets certain requirements, and then deliver the writ of execution to a sheriff or constable. *See* Tex. R. Civ. P. 622, 629; *Jong Ik Won*, 324 S.W.3d at 834. The officer then levies on the property that is described in the writ of execution, usually by taking possession of the property (if personal property) or endorsing the writ (if real property). *See* Tex. R. Civ. P. 637, 639; *Jong Ik Won*, 324 S.W.3d at 834. If the officer has followed all appropriate procedures, such as providing notice

17

to the property owner, the property may be sold to satisfy the judgment. *See* Tex. R. Civ. P. 646a-650; *Jong Ik Won*, 324 S.W.3d at 834. "A valid levy of an execution creates a lien on the debtor's property in favor of the judgment creditor." *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted).

Filing and recording an abstract of judgment creates a judgment lien as to a debtor's real property. *Id.* at 38. To obtain a judgment lien on a judgment, the judgment creditor must comply with the statutory requirements to create the lien. Tex. Prop. Code Ann. §§ 52.001-.007. The first step in creating a lien on a judgment is to obtain an abstract of the judgment. *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex. App.—Dallas 1988, writ denied). "The purpose of the abstract of judgment is (1) to create a judgment lien in the first place and (2) to provide notice to subsequent purchasers of that lien's existence." *Gordon*, 352 S.W.3d at 37. Typically, the clerk of the court in which the judgment was rendered prepares the abstract of the judgment. Tex. Prop. Code Ann. § 52.002(a). "It is the judgment creditor's responsibility, however, to ensure that the clerk abstracts the judgment properly." *Gordon*, 352 S.W.3d at 38.

When a lien is properly filed in the property records of a county, the lien attaches to any real property of the defendant in that county. Tex. Prop. Code Ann.

§ 52.001. Thus, "[w]hen properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders." *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). "Accordingly, if a judgment lien is properly attached to a property, a subsequent purchaser of the property purchases subject to the judgment lien." *Gordon*, 352 S.W.3d at 39. "Substantial compliance with section 52.003 is *essential and mandatory* to the creation of the lien itself and is not required solely to ensure that subsequent purchasers are provided notice." *Citicorp Real Estate, Inc.*, 747 S.W.2d at 931 (emphasis in original).

As to Wirt's purchase of the Real Property, we conclude that the summary judgment evidence shows that Wirt was an innocent purchaser for value without any notice of a claim by LaBelleCo. The summary judgment evidence shows that Hilborn foreclosed on Gator's real property by foreclosure deed on January 2, 2018; that deed was filed of record in the real property records of Harris County on the same day; that LaBelleCo obtained a money judgment against Gator on January 9, 2018; that LaBelleCo obtained an abstract of judgment on February 14, 2018; that Wirt purchased the Real Property from Howard Hilborn on April 5, 2018; that the special warranty deed with vendor's lien was recorded in the real property records

19

of Harris County on April 9, 2018; and that LaBelleCo never filed an abstract of judgment in the real property records of Harris County.

In its motion for summary judgment, LaBelleCo asserts that it abstracted its final judgment in the real property records of Jefferson County on February 14, 2018, and abstracted its final judgment in the real property records of Harris County, Texas on July 1, 2019. LaBelleCo offers no summary judgment evidence to prove that it abstracted its final judgment in Harris County. As to the judgment in Jefferson County, LaBelleCo attached to its motion an "Abstract of Judgment" issued by the Jefferson County Clerk on February 14, 2018. However, LaBelleCo's evidence shows that abstract of judgment was never filed in the real property records of Jefferson County; therefore, there is no proof on its face that the instrument was recorded in any Texas county, let alone Harris County. Therefore, LaBelleCo cannot show as a matter of law that its abstract of judgment created a creditor's lien. *See* Tex. Prop. Code Ann. § 52.001; *Hoffman, McBryde & Co., P.C. v. Heyland*, 74 S.W.3d 906, 909 (Tex. App.—Dallas 2002, pet. denied); *accord McGlothin v. Coody*, 59 S.W.2d 819, 820 (Tex. Comm'n App. 1933, judgm't adopted); *Olivares v. Nix Trust*, 126 S.W.3d 242, 248 (Tex. App.—San Antonio 2003, pet. denied).

Thus, the summary judgment evidence shows that because LaBelleCo never recorded its abstract of judgment, its January 9, 2018, final judgment does not

constitute a lien that attached to the Real Property. Wirt purchased the Real Property without notice of LaBelleCo's claims.

Moreover, LaBelleCo's judgment against Gator's assets could have attached solely to the assets Gator owned as of January 9, 2018, the date the trial court signed the final judgment against Gator. Since Hilborn properly foreclosed on the Real Property on January 2, 2018 – before LaBelleCo obtained its final judgment – LaBelleCo's final judgment could not attach to the Real Property because Gator had no interest in the Real Property when on January 9, 2018, LaBelleCo obtained a final judgment against Gator.

Next, we turn to whether Wirt produced summary judgment evidence sufficient to establish that as a matter of law he was a bona fide purchaser of the Personal Property. To be an innocent purchaser or a bona fide purchaser, the buyer must have (1) purchased the property in good faith, (2) paid value for the property, and (3) had no legal notice, actual or constructive, of the outstanding interest. *See Cooksey v. Snider*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam). Bona fide purchaser status is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). A defendant seeking summary judgment on an affirmative defense must conclusively establish each element of the defense. Tex. R. Civ. P. 166a(b), (c); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

21

If the movant produces sufficient summary judgment evidence to establish his right to summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Siegler*, 899 S.W.2d at 197.

Here, the summary judgment evidence produced by Wirt established that he was a bona fide purchaser who made a good faith purchase for valuable consideration without actual or constructive notice of an outstanding equity or an adverse interest or title. Wirt's summary judgment evidence shows that: (1) Wirt purchased from Hilborn through a bill of sale on April 5, 2018, "[a]ll items of personal property, both tangible and intangible (excluding cash), affixed or attached to, or placed or situated on, or used or acquired in any way whatever in connection with the use, enjoyment, occupancy, or operation of the Real Property, including, without limitation, all equipment, furniture, building supplies, appliances, machinery, and fixtures owned by Seller and located in or on or used in connection with the Real Property or the operations thereon"; (2) the total purchase price of the Real Property and Personal Property was $959,142.62; (3) the total purchase price included a negotiated cash consideration of $150,000.00 due to the Personal Property; (4) Wirt had no knowledge of any claims or judgment in favor of LaBelleCo at the time he purchased the Real Property and Personal Property from Howard Hilborn; (5) Wirt had no knowledge of any claims or judgment in favor of

22

LaBelleCo at the time he entered into the contract with P&M to auction various items of Personal Property; and (6) on the date of the auction (February 21, 2019) agents and/or attorneys from LaBelleCo contacted Wirt and P&M demanding proceeds from the auction sale of the Personal Property that Wirt purchased from Hilborn.

In their motion for summary judgment, LaBelleCo argued that Wirt cannot establish the first two elements of the bona fide purchaser defense because Wirt cannot "establish [that] he bought Gator's industrial equipment in good faith and for equivalent value." LaBelleCo claims that Wirt admitted in his deposition testimony that "he did not purchase Gator's personal property assets for any value, because Wirt paid nothing for Gator's personal, industrial assets." LaBelleCo also claims "Wirt admitted under oath" the following statements: "(1) Wirt did not know Gator's personal industrial equipment was included in Wirt's purchase of Gator's real property from Hilborn; (2) Wirt never appraised the value of Gator's personal property; and (3) the sale price paid by Wirt was the foreclosure price on Gator's real estate – which means Gator's $198,000.00 of industrial equipment was obtained by Wirt for free."

However, that is not what Wirt's deposition testimony shows. Wirt's testimony shows that he knew he was purchasing the Personal Property. Wirt testified that he purchased from Hilborn "[b]uildings on about five acres in Pasadena

23

with improvements and personal properties, everything he had over there." Wirt also included a Bill of Sale as part of his summary judgment evidence which shows he purchased the Personal Property associated with the Real Estate. He also testified in his deposition:

> So the personal property on there – I mean, the reason I bought the building and paid what I did was because I knew there was some stuff – some money available to where I could sell it even for scrap, you know, at 5 cents a pound for metal, that I'd have some money to….help me make payments on it.

Likewise, the deposition testimony does not show that Wirt obtained $198,000.00 of Gator's industrial equipment for free. Wirt testified that he did not pay separately for the Personal Property, but rather the purchase of the Real Property and Personal Property was "done all in one closing" "instead of doing two different deals." Wirt testified that his purchase was a "total package. That's why we did a bill of sale, but everything was to be included." And, both Wirt and Hilborn averred in their affidavits that an additional $150,000.00 in cash was included in the sales price as consideration for the Personal Property.

LaBelleCo has failed to raise a genuine issue of material fact whether or not Wirt paid value for the Personal Property. A property owner may testify to the value of his property. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). "The consideration

24

necessary to establish a bona fide purchaser for value is not market value, it is value that is not grossly inadequate." *Southside Partners v. Collazo Enters., LLC*, No. 11-16-00346-CV, 2018 WL 6729732, at *6 (Tex. App.—Eastland Dec. 21, 2018, no pet.) (mem. op.); *see McAnnaly v. Panther*, 26 S.W.2d 478, 480 (Tex. Civ. App.—Eastland 1930, no writ) (where price is grossly inadequate, the purchaser cannot be a bona fide purchaser for value); *Phillips v. Latham*, 523 S.W.2d 19, 24 (Tex. App.—Dallas 1975, writ ref'd n.r.e.) ("Although good faith does not necessarily require payment of the full value of the property, a purchaser who pays a grossly inadequate price cannot be considered a good-faith purchaser for value.").

Wirt did admit in his deposition testimony and in his affidavit that he did not conduct an appraisal of the personal property items that were previously owned by Gator. However, Wirt's affidavit and deposition testimony established that Wirt was an experienced real estate and business investor, and as such, Wirt knew the Personal Property had value which Wirt thought he could recover through direct sales or in an auction. Both Wirt and Hilborn averred in their affidavits that the total purchase price included an additional $150,000.00 of consideration, which they attributed due to the Personal Property. The net proceeds from the auction were $198,974.00. Thus, the evidence in the record provides no support for LaBelleCo's claim that Wirt considered $150,000.00 to be a grossly inadequate price to pay for the Personal

25

Property. We conclude that LaBelleCo failed to present summary judgment evidence to meet its burden of proof sufficient to raise a genuine issue of material fact regarding the first two elements of Wirt's bona fide purchaser defense.

LaBelleCo also asserts in its motion for summary judgment that Wirt cannot prove the third element of his bona fide purchaser defense: whether Wirt had notice of LaBelleCo's final judgment lien. LaBelleCo claims that its final judgment was abstracted in Jefferson County and that Wirt received a phone call from the Harris County constable attempting to enforce LaBelleCo's final judgment before the auction occurred; therefore, LaBelleCo concludes that before the auction, Wirt had actual knowledge that LaBelleCo had a final judgment lien against Gator.

The required notice of a third-party claim or interest may be constructive or actual. *Madison*, 39 S.W.3d at 606. Actual notice requires personal information or knowledge. *Id.* Constructive notice will be found only if the third party has possession of the property, and that possession is visible, open, exclusive, and unequivocal. *Id.* (citing *Strong v. Strong*, 98 S.W.2d 346, 350 (Tex. 1936)). Whether such notice exists is determined at the time of the transfer, meaning when the defendant acquired the disputed property, a determination that is made without the benefit of hindsight. *See Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 130 (Tex. 2019).

As previously discussed, LaBelleCo never abstracted its judgment in the real property records of Jefferson County or of Harris County. Therefore, Wirt was not on notice that LaBelleCo had a final judgment for a money judgment against Gator. And even though Wirt learned about LaBelleCo's final judgment on the day of the auction, notice is determined at the time of the transfer. *See id.* It is inconsequential that Wirt learned about LaBelleCo's final judgment almost ten months after the transfer of the Personal Property. LaBelleCo has failed to raise a genuine issue of material fact as to all elements of the bona fide purchaser defense. With respect to the Personal Property, we conclude that the trial court abused its discretion in failing to declare Wirt a bona purchaser.

In its motion for summary judgment, LaBelleCo also asserts a claim against Wirt for violations of the Uniform Fraudulent Transfer Act ("UFTA"). Specifically, LaBelleCo claims that Wirt violated Texas and Business and Commerce Code section 24.005(a) (the BCC) because "Wirt's instructions to [Plant & Machinery, Inc.] to proceed with the auction was a 'transfer made or obligation incurred by a debtor [that is] fraudulent to a creditor [LaBelleCo], whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred…[.]'" *See* Tex. Bus. & Com. Code Ann. § 24.005(a). LaBelleCo claims that Wirt had "actual knowledge" of LaBelleCo's final judgment prior to the

27

P&M auction and that by proceeding with the auction, Wirt violated the UFTA. LaBelleCo claims that Wirt cannot qualify for a bona fide purchaser defense under the BCC section 24.004(b) because his deposition testimony shows that Wirt did not give a "reasonably equivalent value" for Gator's industrial equipment. *See id.* § 24.004(b), (d).

Chapter 24 of the BCC is known as the Uniform Fraudulent Transfer Act. *See id.* §§ 24.001-.013. UFTA is intended to prevent debtors from defrauding creditors by moving assets out of reach. *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex. App.—Dallas 2013, no pet.); *Arriaga v. Cartmill*, 407 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "[T]he focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven." *Challenger Gaming Solutions,* 402 S.W.3d at 298.

Consistent with its purpose, UFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *Arriaga*, 407 S.W.3d at 932. UFTA delineates what types of transfers and obligations are fraudulent, enumerates the remedies available to a creditor, prescribes the measure of liability of a transferee, and lists the defenses and protections afforded a transferee. *Altus Brands II, LLC, v. Alexander*, 435 S.W.3d

28

432, 441 (Tex. App.—Dallas 2014, no pet.). Under the UFTA, the trial court may find a substantial likelihood of success on the merits when it is "presented with evidence or intent to defraud the creditor." *See Tanguy v. Laux*, 259 S.W.3d 851, 858 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Under the UFTA, "a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). Actual intent to defraud creditors is ordinarily a fact question. *Qui Phuoc Ho v. MacArthur Ranch, LLC*, 395 S.W.3d 325, 328 (Tex. App.—Dallas 2013, no pet.). Circumstantial proof may be used to prove fraudulent intent since direct proof is often unavailable. *Id*. Facts and circumstances that may be considered in determining fraudulent intent include a nonexclusive list of "badges of fraud" prescribed by the legislature. *See* Tex. Bus. & Com. Code Ann. § 24.005(b). These include, for example, transfer to an insider, suit or threatened suit against the debtor before the transfer, transfer of substantially all of the debtor's assets, the debtor's insolvency at the time of transfer or shortly afterwards, concealment of the transfer, and whether the consideration the debtor received was reasonably equivalent to the asset transferred. *See id*. § 24.005(b).

As applicable to this case, "[a] transfer made…by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 24.005(a)(1). A "'[t]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 24.002(12). "Value" is given for a transfer or obligation if, in exchange for the transfer or obligation, property is transferred, or an antecedent debt is secured or satisfied. *Id.* § 24.004(a). A "[r]easonably equivalent value" includes a transfer or obligation that is within the range of values for which the transferor would have sold the asset in an arm's length transaction. *Id.* § 24.004(d).

"The fundamental remedy for a creditor who establishes a fraudulent transfer is recovery of the property from the person to whom it has been transferred." *Challenger Gaming Solutions, Inc.*, 402 S.W.3d at 294; *see* Tex. Bus. & Com. Code Ann. § 24.008. Section 24.009 provides an affirmative defense to "a person who took [the asset] in good faith and for reasonably equivalent value." Tex. Bus. Com Code. Ann § 24.009(a). If the person establishes the defense, then the transfer "is

not voidable under Section 24.005(a)(1)" and the transferee may keep the transferred asset. *Id.* § 24.009(a). However, if a transferee does not establish the affirmative defense, the creditor, subject to certain exceptions, "may recover judgment [against the transferee] for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less." *Id.* § 24.009(a). In addition, "if the judgment under Subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." *Id.* § 24.009(c).

"Debtor" is defined as "a person who is liable on a claim." *Id.* § 24.002(6). "Claim" means "a right to payment or property, whether or not the right is reduced to judgment […]" *Id.* § 24.002(3). LaBelleCo obtained a final money judgment against Gator. Therefore, Gator is considered a debtor under the UFTA. Wirt is not a debtor of LaBelleCo.

Here, the UFTA requires evidence of the following: (1) that LaBelleCo is a creditor, i.e., has a claim against; (2) debtor Gator; (3) that Gator transferred the asset after, or a short time before, LaBelleCo's claim arose; and (4) that those transfers were made with the intent to hinder, delay, or defraud LaBelleCo. *See id.* § 24.005(a)(1).

LaBelleCo has produced no evidence that *Gator* transferred assets before or after LaBelleCo's claim arose with the intent to hinder, delay, or defraud LaBelleCo. Instead, the summary judgment evidence shows that (1) Howard Hilborn sold to Gator three tracts of real estate in Harris County on August 23, 2016; (2) that the note was secured by a first and superior vendor's lien; (3) Gator failed to make payment due under the note; (4) Hilborn foreclosed on Gator's interest in the real property by virtue of a foreclosure deed dated January 2, 2018; (5) Hilborn sold the Real Property to Wirt by virtue of a special warranty deed with vendor's lien dated April 5, 2018 and filed of record April 9, 2018; and (6) Hilborn sold all the items of Personal Property that were on the Real Property to Wirt by virtue of a bill of sale dated April 5, 2018. Wirt and Hilborn averred in their summary judgment affidavits that neither had any involvement with or interest in Gator. Wirt specifically stated that he has never been an "affiliate" or "insider" of Gator.

LaBelleCo did not produce summary judgment evidence to show that it is entitled to judgment as a matter of law on its UFTA claim, and LaBelleCo did not produce summary judgment evidence that showed Gator transferred assets to a transferee (Wirt) with actual intent to hinder, delay, or defraud LaBelleCo. Therefore, the trial court erred when it granted summary judgment to LaBelleCo on its UFTA claim.

Because Wirt established by summary judgment evidence that he was an innocent purchaser for value without notice of LaBelleCo's claim, LaBelleCo did not raise a genuine issue of material fact as to this issue with their summary judgment evidence, and that LaBelleCo did not prove that Wirt violated the UFTA[3], it follows that Wirt is entitled to the proceeds from the auction. The trial court erred in awarding the $35,000.00 to LaBelleCo that had been deposited into the registry of the court and represented the proceeds of the sale from the disputed property in the P&M auction.

In his third issue, Wirt complains that the trial court erred in failing to grant summary judgment as to Wirt's claim for tortious interference with a contract. Wirt's

---

[3]Because the record demonstrates that Wirt is a bona fide purchaser who made a good faith purchase for valuable consideration without actual or constructive notice of LaBelleCo's claim, the record also demonstrates that LaBelleCo cannot establish its claims against Wirt for fraud and constructive fraud as a matter of law. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (stating that a common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury); *Strobach v. WesTex Community Credit Union*, 621 S.W.3d 856, 879 (Tex. App.—El Paso 2021, pet. denied) (stating that "constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests"); *see also Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 129 (Tex. 2019) (holding that a good faith transferee, in the context of the Uniform Fraudulent Transfer Act, is a transferee who "was honest in fact, reasonable in light of known facts, and free from willful ignorance of fraud").

claim against LaBelleCo for tortious interference is based on his allegation that LaBelleCo had no valid claim or interest against the proceeds from the auction sale conducted by P&M and that P&M "failed to release any auction proceeds to Wirt until LaBelleCo required it to file an original interpleader petition with respect to $35,000.00 in auction proceeds," which the trial court ordered deposited into the registry of the court.

"A party to a contract has a cause of action for tortious interference against any third person who wrongly induces another contracting party to breach the contract." *Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995). The elements of tortious interference with an existing contract are (1) there exists an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

A defendant may obtain summary judgment dismissing a claim of tortious interference with an existing contract by disproving one or more elements of the claim as a matter of law. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998). As an affirmative defense, a defendant may negate liability for tortious

34

interference on the ground that its conduct was privileged or justified. *Prudential*, 29 S.W.3d at 80; *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001) (holding that a defendant who induces breach of contract must show some justification or privilege for depriving another of benefits to which agreement entitled him). Merely inducing an obligor under a contract to do what it has a right to do is not actionable interference. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). When a defendant asserts this affirmative defense, the burden shifts to him to prove the defense. *Cmty. Health Sys. Prof'l Servs. Corp.* v. *Hansen*, 525 S.W.3d 671, 697 (Tex. 2017).

A party is privileged to interfere with the contractual relations of another if (1) it acts in the bona fide exercise of its own right, or (2) it has an equal or superior right in the subject matter to that of the party to the contract. *Id.* The justification defense is based on either the exercise (1) of one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though the claim ultimately proves to be mistaken. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996). When a defendant establishes a legal right to act as it did, the defendant conclusively establishes the defense of justification, and the defendant's motivation behind the assertion of its right is irrelevant. *Id.* The good faith of the defendant is legally significant only where the defendant asserts a mistaken, but colorable, claim of a

35

legal right. *See id.* at 212. A right is colorable "if it appears, without further inquiry (that is, if it appears on its face), genuine, truthful, valid, or existing." *Bennett v. Comput. Assocs. Intern., Inc.*, 932 S.W.2d 197, 202 (Tex. App.—Amarillo 1996, writ denied).

On appeal, Wirt argues that the evidence establishes as a matter of law all vital facts supporting Wirt's claim for tortious interference because the summary judgment evidence shows that LaBelleCo caused P&M to breach its contract with Wirt in that LaBelleCo required P&M to file an original interpleader petition with respect to the $35,000.00 in auction proceeds, which were then deposited into the court's registry. More specifically, Wirt's summary judgment evidence demonstrates that he had no knowledge of any claims or judgment in favor of LaBelleCo at the time he purchased the Real Property and the Personal Property. Wirt attested that on the day of the auction, LaBelleCo contacted him and P&M demanding proceeds of the sale of the Personal Property from Hilborn. According to Wirt, Wirt asked LaBelleCo to provide evidence or documentation that would entitle it to proceeds from the auction of the Personal Property and that P&M initially refused to release any proceeds from the auction of his Personal Property because of LaBelleCo's claims. Wirt further claimed that LaBelleCo "forced" P&M to file an original interpleader with respect to the $35,000.00 in auction proceeds. By forcing

P&M to file an interpleader, LaBelleCo caused P&M to breach its contract with Wirt.

At issue is whether this constitutes some evidence of LaBelleCo's "willful and intentional act of interference." Texas courts have held that to satisfy this element of the cause of action for tortious interference, a party must be more than a willing participant; it must knowingly induce one of the contracting parties to breach its obligations. *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *John Paul Mitchell Sys. v. Randall's Food Mkts.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied). To establish an actionable "willful and intentional act," the evidence must show the defendant's influence and "knowing inducement" of the contract obligor's wrongful action. *Browning-Ferris*, 865 S.W.2d at 927.

The summary judgment evidence here, however, raises a genuine issue of material fact as to whether LaBelleCo acted with the requisite intent. The summary judgment evidence produced by LaBelleCo establishes that it obtained a final judgment against Gator on January 9, 2018, and that it obtained a writ of execution on February 14, 2019. LaBelleCo attempted to execute this writ on February 19, 2019, as evidenced by its letter to the Harris County Constable asking the constable to serve the writ on Gator at the auction. The summary judgment evidence shows that, even though later proven to be mistaken, LaBelleCo believed it was exercising

its legal right when it attempted to execute the writ and collect its final judgment against Gator. *See Bennett*, 932 S.W.2d at 202. By filing the interpleader action, P&M was asserting its rights as disinterested stakeholder subject to rival and conflicting claims. *See* Tex. R. Civ. P. 43; *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 807 (Tex. 2007); *Aaron v. Fisher*, 645 S.W.3d 299, 313 (Tex. App.—Eastland 2022, no pet.).

We conclude the summary judgment evidence raises a material fact issue regarding whether there was a willful and intentional act of interference with Wirt's contract to sell his property at auction. Accordingly, the trial court erred when it granted LaBelleCo's motion for summary judgment on Wirt's tortious interference claim. Since there is a fact issue as to Wirt's intentional interference claim, we would usually consider remanding to the trial court for a trial before a factfinder to determine whether LaBelleCo willfully, maliciously, and intentionally tortiously interfered with Wirt's contract with P & H. However, in his brief, Wirt only seeks reversal of the trial court's Final Judgment and for this Court to render judgment in favor of Wirt. In other words, Wirt did not request a reversal and remand, nor did he in the alternative request a remand on any fact issue that would prevent the trial court from granting a summary judgment. Since this Court cannot grant relief not requested by the Appellant, we conclude Wirt waived a request for a reversal and

38

remand. *See Solomon v. Buckle*, No. 01-23-00349-CV, 2024 WL 1098204, at *7 (Tex. App.—Houston [1st Dist.] Mar. 14, 2024, no pet. h.). Furthermore, and regardless of the above, we further conclude that in his motion for summary judgment, Wirt's evidence was insufficient and failed to establish as a matter of law that LaBelleCo willfully, maliciously, and intentionally tortiously interfered with Wirt's contract with P & H. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211-12 (Tex. 1996).

Finally, Wirt complains of the trial court's award of attorney's fees. As part of his first issue, Wirt complains the trial court abused its discretion in awarding LaBelleCo attorney's fees. In its motion for summary judgment, LaBelleCo asked the court to award its attorney's fees, costs, and expenses. LaBelleCo claimed it was entitled to attorney's fees, costs, and expenses from Wirt "[s]ince Wirt intentionally violated the Texas Uniform Transfer Act." In his third issue, Wirt complains on appeal that the trial court abused its discretion by failing to award Wirt attorney's fees against LaBelleCo in its final judgment. Wirt claims that the evidence shows he is entitled to attorney's fees under Section 37.009 of the Texas Civil Practice and Remedies Code and Chapter 24 of the Texas Business and Commerce Code.

"In any proceeding [for declaratory judgment] the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac.

& Rem. Code Ann. § 37.009. A party doesn't need to prevail to be awarded attorney's fees under the Declaratory Judgments Act ("DJA"). *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 700-01 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The award of such costs and fees is within the discretion of the trial court and an award premised on an action for declaratory judgment will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985).

Under the UFTA, a trial court may also award costs and reasonable attorney's fees "as are equitable and just." *See* Tex. Bus. & Com. Code Ann. § 24.013; *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 80 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This provision of the UFTA "gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard." *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007, no pet.). When fees may be awarded by statute, the award is not dependent upon whether the party prevails in the case. *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996).

Furthermore, where the prevailing party has changed on appeal, we would usually consider remanding the issue of attorney fees to the trial court for consideration of what is equitable and just." *See Morath v. Tex. Taxpayer & Student*

*Fairness Coal.*, 490 S.W.3d 826, 885 (Tex. 2016). However, as mentioned, Wirt asked this Court to reverse the trial court's Final Judgment and render judgment in his favor. He did not request that this Court reverse and remand any issues to the trial court if he prevailed on any of the claims he raised in his appeal, nor did Wirt alternatively request that this Court remand as to any issues so that the trial court could consider whether to award him attorney's fees. In fact, Wirt claimed that his attorney's fees testimony was direct and uncontroverted by any other evidence, and he argued that this Court should reverse and render an award of attorney's fees in the amounts set forth in his attorney's Declaration, which he attached as Exhibit D to his motion for summary judgment. However, as we explained, under the DJA and the UFTA the trial court's decision about whether to award attorney's fees lies within the discretion of court, an issue which may only be determined on remand. As an intermediate appellate court, we may not grant the relief that the Appellant failed to request in his brief, and for that reason we conclude that Wirt waived his right to have this Court reverse the trial court's judgment and remand the case to the trial court so that the trial court may consider whether he should be awarded his attorney's fees. *See Solomon*, 2024 WL 1098204, at *7.

## Conclusion

We conclude that Wirt was entitled to summary judgment on his claim that he was a bona fide and good faith purchaser for value as to the real and personal property conveyed to him through a special warranty deed dated April 9, 2018, and filed of record in Harris County, and that Wirt did not have actual or constructive notice of an outstanding equity or an adverse interest or title by LaBelleCo. Because Wirt established that he was entitled to summary judgment on his bona fide purchaser defense, we hold the trial court erred in failing to grant Wirt's motion for summary judgment seeking the $35,000.00 in proceeds that P&M Machinery, Inc. deposited into the registry of the court.

We further conclude that in its motion for summary judgment, LaBelleCo failed to establish that it was entitled to judgment as a matter of law on its UFTA claim. Specifically, LaBelleCo's evidence fails to establish as a matter of law that Gator transferred assets to a transferee (Wirt) with the intent to hinder, delay, or defraud LaBelleCo. Likewise, LaBelleCo's evidence fails to establish as a matter of law that Wirt did anything to hinder, delay, or defraud LaBelleCo. Therefore, the trial court erred in granting LaBelleCo's request for summary judgment on its UFTA claim, awarding attorney's fees to LaBelleCo on the UFTA claim, and awarding the money that P&M had deposited into the registry of the court to LaBelleCo.

Given these conclusions, it appears that Wirt is the sole party who has prevailed on a claim to the proceeds in the registry of the court. Yet in addition to Wirt's claim to the proceeds on his theory that when he purchased the property he didn't have notice of LaBelleCo's claim, Wirt also sued LaBelle for tortiously interfering with the auction of the property, which resulted in P&M depositing the disputed proceeds of the auction into the registry of the court. The trial court granted LaBelleCo's motion for summary judgment against Wirt on that claim, but we conclude that the evidence that Wirt presented to support his intentional interference with contract claim raises an issue of material fact as to whether LaBelleCo willfully and intentionally interfered with Wirt's contract with Plant & Machinery, Inc.

Thus, Wirt has two claims to the proceeds in the registry of the court. As a bona purchaser for value, we hold his motion for summary judgment established that he was a bona purchaser as a matter of law. As to his intentional interference claim, however, there is a fact issue that would require a trial before a factfinder to determine whether he is entitled to the proceeds in the registry of the court. However, in his brief, Wirt only seeks reversal of the trial court's Final Judgment and for this Court to render judgment in favor of Wirt. In other words, Wirt did not request a reversal and remand, nor did he in the alternative request a remand on any fact issue that would prevent the trial court from granting a summary judgment. Since this

43

Court cannot render a judgment not requested by the Appellant, we conclude Wirt waived a request for a reversal and remand. Furthermore, and regardless of the above, we further conclude that in his motion for summary judgment, Wirt's evidence was insufficient and failed to establish as a matter of law that LaBelleCo willfully, maliciously, and intentionally tortiously interfered with Wirt's contract with P & H.

Based on these conclusions, we reverse the trial court's summary judgment order granting LaBelleCo's traditional motion for summary judgment against Wirt. We also reverse the trial court's Final Judgment, which awards $35,000.00 in the trial court's registry to LaBelleCo, requires the Jefferson County Clerk to release the $35,000.00 in the registry of the court to LaBelleCo, and orders additional recoveries against Freddy Wirt for attorney's fees, costs, and conditional awards of attorney's fees for appeals. We render judgment that LaBelleCo take nothing on its claims against Wirt.

As to Wirt's claims, we have held that he established he is a bona fide purchaser as a matter of law and entitled to the $35,000.00 in proceeds that were deposited in the registry of the court, so we reverse the trial court's summary judgment order denying Wirt's traditional motion for summary judgment against LaBelleCo on Wirt's bona fide purchaser defense. We render judgment that Wirt is

44

entitled to the $35,000.00 and is awarded those proceeds that were deposited in the registry of the court. We further render judgment that the Jefferson County Clerk shall release the $35,000.00 in the Court's Registry via a check made payable to "Freddie Wirt" within seven (7) days of the date of this Court's Mandate, and the Jefferson County Clerk shall mail that check to Wirt's attorney of record on appeal.

REVERSED AND RENDERED.

W. SCOTT GOLEMON
Chief Justice

Submitted on August 17, 2023
Opinion Delivered April 4, 2024

Before Golemon, C.J., Horton and Johnson, JJ.